IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

ALONZO LAMAR JOHNSON,

*Defendant*.

Criminal No. 2:08-374

## OPINION

### I.      Introduction

Pending before the Court is a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and Amendment 782, filed by defendant Alonzo Lamar Johnson ("Johnson") (ECF No. 1286), with two briefs in support (ECF Nos. 1302, 1305).  In the motion, Johnson argues that he is entitled to compassionate release because: (1) if he was sentenced today under the First Step Act amendments to 21 U.S.C. § 841(b)(1)(B)(i), his term of imprisonment would be substantially lower, i.e., his prior convictions did not qualify as "serious drug felonies"; and (2) he qualifies for the reduction for crack cocaine offenses in Amendment 782.  In his briefs, Johnson also argues that he is entitled to compassionate release due to: (a) COVID-19 because he is obese, needs chronic care and is African-American, and (b) family circumstances, namely, that his son is now incarcerated and his family needs him.

Pursuant to the court's Administrative Order 20-mc-629, counsel was appointed under the Criminal Justice Act ("CJA") to review the pro se motion and advise the court whether a counseled supplemental filing would be forthcoming.   After review, counsel notified the court and Johnson

that he was not going to file a supplement to the pro se motion (ECF No. 1294).  The court subsequently granted Johnson's motion to remove the CJA attorney as his counsel of record (ECF No. 1296).

On January 7, 2021, the federal public defender entered an appearance on behalf of Johnson and the court granted leave to file a counseled supplement.  On January 14, 2021, Johnson filed a pro se motion to amend his compassionate release motion, to report that he contracted COVID-19 (ECF No. 1332).  This motion will be granted in part, to the extent that the court will consider this information in determining whether compassionate release is warranted.  The federal public defender subsequently filed a motion to withdraw as counsel (ECF No. 1340) and Johnson filed a similar motion to remove the federal public defender as his attorney and to proceed pro se (ECF No. 1341).  The motions to remove the federal public defender as Johnson's counsel will be granted.

The government filed a response in opposition to Johnson' original motion (ECF No. 1310).  Because the federal public defender will not be filing a counseled supplement, further response from the government is not necessary to resolve the pending motions.  The government argues that the First Step Act does not retroactively apply to Johnson; he did not exhaust his administrative remedies for release due to COVID-19; he did not establish extraordinary and compelling reasons for release; he poses a danger to the community; and release is not warranted after considering the § 3553(a) factors (ECF No. 1310).[1]  On December 7, 2020, Johnson filed a reply brief, with attachments, addressing the COVID-19 situation at FCI Fort Dix (ECF No. 1322).  As noted, Johnson reported that he tested positive for COVID-19 on December 31, 2020.

---

[1] Johnson appealed the court's order of October 22, 2020, which granted the government's motion for an extension of time to file its response.

## II.       Procedural History

Johnson's case has been the subject of extensive post-conviction proceedings.  On August 21, 2009, Johnson and numerous codefendants were charged in count 1 of the superseding indictment with conspiracy to distribute 5 kilograms or more of cocaine and 50 grams or more of crack cocaine.  (ECF No. 205).  In 2010, the Fair Sentencing Act was enacted, which increased the threshold for increased penalties from 5 grams of crack cocaine to 28 grams.  At trial in April 2012, the parties and court crafted the verdict form to reflect the 28-gram statutory threshold.[2]  On April 17, 2012, Johnson was convicted by a jury.  In the presentence investigation report ("PSI"), the probation office determined that Johnson was responsible for 10.5 kilograms of powder cocaine and 99 grams of crack cocaine.  These findings were adopted by the court (ECF No. 977 at 9).  On July 30, 2013, Johnson was sentenced to a term of imprisonment of 300 months, which was 60 months below the low end of the guideline range.  Johnson filed a direct appeal.  The court of appeals affirmed Johnson's conviction and sentence.  (ECF Nos. 1103, 1112).  On April 17, 2017, the United States Supreme Court denied certiorari.  On December 9, 2019, the court of appeals summarily affirmed this court's decision denying Johnson's § 2255 motion (ECF Nos. 1233, 1263).

Of particular relevance to the pending motion, Johnson filed a pro se motion for a reduced sentence under § 404 of the First Step Act (ECF No. 1242), arguing that his crack cocaine conviction was a "covered offense" which entitled him to a sentence reduction.  On January 29, 2020, the court denied Johnson's motion (ECF No. 1267).   The court concluded that Johnson did commit a "covered offense," as defined in § 404(a) of the First Step Act because the crack cocaine

---

[2] Johnson's challenge to this court's jurisdiction, based upon the constructive amendment of the superseding indictment in the verdict slip, should have been raised in his direct appeal. United States v. Sokolow, 1999 WL 167677 (E.D. Pa. Mar. 23, 1999) (discussing procedural default).

conspiracy occurred prior to August 3, 2010, but held, pursuant to § 404(c), that it could not entertain Johnson's First Step Act motion because his previously imposed sentence was in accordance with the Fair Sentencing Act.  The court noted that Johnson's crack cocaine conviction did not affect Johnson's sentence, which was driven by his criminal history, career offender status, the § 851 information filed by the government (ECF No. 740), which increased the statutory mandatory minimum penalty to 20 years of imprisonment, and his conviction for the powder cocaine conspiracy.  The court explained that Johnson's statutory penalties and sentencing range would have been identical based solely on his conviction for a conspiracy involving 5 kilograms or more of powder cocaine (ECF No. 1267).  The court also rejected Johnson's challenge to the § 851 Information on the ground that he did not serve twelve months in prison, as required by the First Step Act § 401, and explained that § 401 applies only if a sentence for the offense has not been imposed as of the date of enactment.  (ECF No. 1267 at 6 n.3) (citing Pub. L. No. 115-391 § 401(c) and United States v. Aviles, 938 F.3d 503, 510 (3d Cir. 2019)).  Johnson's appeal of this decision remains pending.

Johnson is currently incarcerated at FCI Fort Dix, New Jersey.  He is 49 years old.  His projected release date is December 28, 2030.  On January 4, 2021, 586 inmates and 12 staff had active cases of COVID-19, https://www.bop.gov/coronavirus/index.jsp, visited January 4, 2021.  On February 1, 2021, the BOP website reflected that there were 71 cases among inmates and 33 among staff.  https://www.bop.gov/coronavirus/index.jsp, last visited February 1, 2021.  There are 2,753 total inmates at the facility.   https://www.bop.gov/locations/institutions/ftd/, last visited November 23, 2020.

Johnson avers that he twice requested compassionate release from the warden at FCI Fort Dix.  His request on June 20, 2020 referenced only his argument that he would receive a dramatically lower sentence if resentenced today because his prior offenses would not trigger

4

enhanced penalties under the First Step Act § 401 (ECF No. 1286-4).   Johnson's request to the warden on June 28, 2020 added a reference that he had "trouble with my breathing and a mild kidney infection," in addition his argument that he would receive a dramatically lower sentence today (ECF No. 1286-2).   The warden promptly responded to both of Johnson's requests (ECF Nos. 1286-1, 1286-3).  Johnson waited more than 30 days before seeking relief in court.  Johnson's motion for compassionate release is now ripe to be decided by the court.

### III.   Discussion

#### A.  Applicable Law

Johnson seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction; or

> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The foregoing statutory provision sets forth a *three-part analysis* for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Doe, No. 20-2650, 2020 WL 6328203, at *1, n.2 (3d Cir. Oct. 29, 2020).

Based upon the foregoing, to grant Johnson compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[3] and (3)

---

[3]     The factors set forth in 18 U.S.C. § 3553(a) are:

compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Johnson bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No. 18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).

### B.  Exhaustion of Administrative Remedies

The government argues, relying United States v. Valenta, Crim. No. 15-161, 2020 WL 1689786 (W.D. Pa. Apr. 7, 2020), that Johnson did not exhaust his administrative remedies

---

– the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

– the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

– the sentencing range established by the Sentencing Commission, § 3553(a)(4);

– any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

– the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

– the need to provide restitution to any victims of the offense, § 3553(a)(7).

because his requests to the warden did not specifically mention COVID-19.  The government's reliance on <u>Valenta</u> is misplaced.  In that decision, the court concluded that the BOP "could not have reasonably known about COVID-19" when it received the defendant's request on January 7, 2020, because the existence of the pandemic was not known at that time.  The United States government announced the formation of a COVID-19 task force on January 29, 2020, and the World Health Organization declared a global health emergency on January 30, 2020.

In this case, Johnson's requests to the warden occurred in June 2020, when the existence of the COVID-19 pandemic was well-known.  Although Johnson's initial request referenced only his legal argument about resentencing, his second request stated that he was experiencing "trouble with my breathing."  (ECF No. 1286-2).  In June 2020, an inmate seeking compassionate release and complaining about breathing problems fairly puts the BOP on notice to consider COVID-19. <u>United States v. Solomon</u>, No. CR 05-350, 2020 WL 5231326, at *2 n.3 (W.D. Pa. Sept. 2, 2020) (citing <u>United States v. Davidson</u>, Nos. 2:16-cr-00139-2 & 2:17-cr-00334, 2020 WL 4877255, at *10 (W.D. Pa. Aug. 20, 2020) ("it would be reasonable to conclude in Defendant's case that the BOP was well aware of the COVID-19 crisis and that her request was, at least partially, related to same.").  The court concludes that Johnson exhausted his administrative remedies.

### C. Extraordinary and Compelling Reasons

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i).  <u>Ray v. Finley</u>, No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts administrative remedies. <u>Id.</u>

"Congress did not define 'extraordinary and compelling reasons' except to provide 'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C. § 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary" reasons for the reduction of a sentence are "defined by the commentary to policy statement U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir. 2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That commentary currently lists four categories of such reasons: (1) the defendant's medical condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13 cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

The court of appeals in Handerhan explained that "[t]he Sentencing Commission has not yet amended § 1B1.13 or its commentary to account for the First Step Act…[and] the District Courts are divided on whether and how to apply the catch-all 'other reasons' category and its reference to determinations made by the Director." Handerhan, 789 F. App'x. at 925 n.1 (citing United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *2 (D. Me. July 11, 2019)). While U.S.S.G. § 1B1.13 was not updated to reflect the First Step Act amendments, the

Commission's policy statement "does not constrain a court's independent assessment about whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." United States v. Somerville, No. 2:12-CR-225-NR, 2020 WL 2781585, at *6-7 (W.D. Pa. May 29, 2020) (holding the court has authority to independently assess whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence).[4]

"The starting point in discerning congressional intent is the existing statutory text[.]" Lamie v. U.S. Tr., 540 U.S. 526, 534 (2004). "Extraordinary and compelling" is not defined by statute, and, therefore, the court must give the terms their "'ordinary meaning.'" United States v. Diallo, 575 F.3d 252, 256 (3d Cir. 2009) (quoting Moskal v. United States, 498 U.S. 103, 108 (1990)). The court in Somerville explained:

> The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

> The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

> Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

---

[4]    This is the conclusion shared by a "vast majority" of courts that considered "whether courts may independently evaluate extraordinary and compelling reasons to reduce sentences" under the catchall provision of U.S.S.G. § 1B1.13. Adeyemi, 2020 WL 3642478, at *10 (collecting decisions); United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *3 (E.D. Pa. Aug. 19, 2020) (finding that district courts "overwhelmingly conclude that a court can make an independent determination of what constitutes extraordinary and compelling reasons"). For example, the court in Adeyemi explained that the directive in U.S.S.G. § 1B1.13 that the Director of the BOP determines whether "other reasons" exist for the compassionate release of a defendant is not authoritative because it contradicts with the plain language of 18 U.S.C. § 3582(c)(1)(A), which requires the court to find extraordinary and compelling reasons for a defendant's release. Adeyemi, 2020 WL 3642478, at *14-15 (citing United States v. LaBonte, 520 U.S. 751, 764 (1997); Stinson v. United States, 508 U.S. 36, 37 (1993)).

Somerville, 2020 WL 2781585, at *7.

Johnson points to the following "extraordinary and compelling" circumstances for compassionate release: (1) if he was sentenced today, he would receive a dramatically lower sentence; (2) his elevated risk from COVID-19 at FCI Fort Dix based on obesity, chronic care and being African-American; (3) his family circumstances arising from the incarceration of his son; and (4) his rehabilitation while incarcerated.

### i.   The Change in the Law in the First Step Act

Johnson's primary argument is that if he was sentenced today, he would not qualify for enhanced punishment under § 851 because § 401 of the First Step Act changed the requirements for predicate drug offenses.  The First Step Act reduced mandatory minimum penalties for some drug offenders and changed the conditions under which the mandatory minimum penalties apply. Aviles, 938 F.3d at 508; United States Sentencing Commission, Office of Education & Sentencing Practice, FIRST STEP Act, INSIDER EXPRESS SPECIAL EDITION, January 2019, at 2.

Section 401 of the First Step Act "replaced the term 'felony drug conviction' with 'serious drug felony' and limited the offenses that qualified for that mandatory sentence." Aviles, 938 F.3d at 508 (citing First Step Act § 401(a)(2)(A)(ii)).  To be a "serious drug felony," the predicate offense must have a statutory maximum penalty of 10 years or more.  18 U.S.C. § 924(e)(2)(A); 21 U.S.C. § 802(57).

Johnson contends that none of his prior offenses had a statutory maximum penalty of 10 years or more.  The government did not address this argument because it argued that § 401 of the First Step Act does not retroactively apply to Johnson, in any event.  The record reflects that Johnson is not correct.  The documents he attached in support of his motion reflect that he was convicted in Criminal Action No. 9113159 of possession with intent to distribute cocaine, in

violation of 35 Pa. Stat. § 780-113(a)(30)  (ECF No. 1286-8); *see* PSI ¶ 24, ECF No. 864).[5]   A violation of section 780-113(a)(30) involving cocaine qualifies as a "serious drug felony" because it is punishable by a maximum sentence of ten years. 35 Pa. Stat. Ann. § 780-113(f)(1.1). *See* United States v. Abbott, 748 F.3d 154, 159-60 (3d Cir. 2014); United States v. Lomax, No. 1:CR-15-0263, 2017 WL 878404, at *2 (M.D. Pa. Mar. 6, 2017) (Pennsylvania conviction for possession with intent to distribute cocaine under § 780-113(a)(30) is a serious drug felony under the Armed Career Criminal Act).  Johnson's argument that, after the First Step Act, he would not have faced an enhanced statutory mandatory minimum sentence under § 851 is wrong.

Even if he qualified, the statutory redefinition of predicate offenses in the First Step Act would not apply to Johnson.  "The First Step Act provides that the amendments made by it 'shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.'" Aviles, 938 F.3d at 508 (quoting First Step Act § 401(c)).  Johnson's sentence was imposed in July 2013, long before the enactment of the First Step Act in December 2018.  It is clear, as this court previously explained, that Johnson is not directly entitled to relief under § 401 of the First Step Act (ECF No. 1267).

The issue before the court, therefore, is whether it can indirectly consider the First Step Act amendments, even though they do not apply retroactively to Johnson, as an extraordinary and compelling reason warranting compassionate release.  The court discussed this issue at length in United States v. McDaniel, No. 11-200 (ECF No. 76, November 13, 2020), and adopted the approach set forth in United States v. Andrews, Crim. Action No. 05-280-02, 2020 WL 4812626, at *10 (E.D. Pa. Aug. 19, 2020).

---

[5] The government's § 851 information (ECF No. 740) listed only the first count of conviction at Criminal Action No. 9113159, for misdemeanor possession of cocaine, in violation of 35 Pa. Stat. Ann. § 780-113(a)(16).

The court in Andrews held that it could not consider the First Step Act amendments as extraordinary and compelling reasons for the defendant's compassionate release. The court explained that Congress determined the First Step Act would not retroactively apply; it is the province of Congress to determine "'the temporal reach of statutes'"; and the court must "give a statute 'its intended [temporal] scope.'" Andrews, 2020 WL 4812626, at *9 (quoting Landgraf v. USI Film Prod., 511 U.S. 244, 273 (1994)).  The court also reasoned that the legislative history showed the First Step Act was the result of legislative compromise, and that "[i]nvocations of lofty ideals of criminal justice reform" could not override the plain text of the amendment, which explicitly provided the Act was not retroactive. Id.

The same rationale applies here. The First Step Act explicitly provides that it does not retroactively apply to a defendant like Johnson, who committed his offense and was sentenced prior to the enactment of the Act. The court is without authority to override the clear intent of Congress and retroactively apply the First Step Act on a case-by-case basis to defendants who committed their offenses and were sentenced prior to the enactment of the Act.  In sum, the court will not consider the First Step Act amendments, which do not retroactively apply to Johnson, as an extraordinary and compelling reason for his compassionate release.

### ii.  Amendment 782

Johnson contends that he is eligible for a sentence reduction under Amendment 782. Amendment 782 (to the sentencing guidelines) reduced the offense levels assigned to most drug quantities under U.S.S.G. § 2D1.1(c) by two levels.  United States v. Ware, 641 F. App'x 108, 109 (3d Cir. 2016).

The government points out, correctly, that Johnson is not eligible for relief under Amendment 782 because his guideline range was based upon his career offender status, not the offense level for drug offenses under U.S.S.G. § 2D1.1(c).  See ECF No. 1267 at 5 ("The crack

cocaine did not affect Johnson's sentence.  Johnson's sentence was driven by his career offender

status, which resulted in an advisory guideline range of 360 months to life").

Amendment 782 did not impact the career offender guideline.  *Ware*, 641 F. App'x at 111.

Johnson, therefore, does not directly qualify for relief under Amendment 782.  *See* Handerhan,

789 F. App'x at 927 (defendant not eligible for relief where amendment to guidelines was not

retroactive).  For the reasons set forth above, because Amendment 782 does not directly apply, the

court will not indirectly consider Amendment 782 as an extraordinary and compelling reason for

compassionate release.

### iii.   COVID-19

The court in Somerville established a two-part analysis to determine whether the COVID-

19 pandemic represents an extraordinary and compelling reason for a defendant's release.  The

court explained:

> While the Third Circuit has not articulated a definitive standard to be applied to
> § 3582(c) motions in this context, it has observed generally that the mere
> "existence of some health risk to every federal prisoner as the result of this
> global pandemic does not, without more, provide the sole basis for granting
> release to each and every prisoner[.]" United States v. Roeder, 807 Fed. Appx.
> 157, 161 n.16 (3d Cir. 2020). From that, the Court infers that a prisoner seeking
> release due to COVID-19 must at least show: (1) a sufficiently serious medical
> condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave
> illness or death if infected by COVID-19; and (2) an actual, non-speculative
> risk of exposure to COVID-19 in the facility where the prisoner is held.

Somerville, 2020 WL 2781585at *4.  (emphasis added). The court will apply the two-part test to

determine whether Johnson set forth extraordinary and compelling reasons for his release based

upon his medical conditions and the situation at FCI Fort Dix during the COVID-19 pandemic.  In

sum, Johnson has the burden to show that: (1) he suffers from a sufficiently serious medical

condition, or advanced age, that places him at a uniquely high risk of grave illness or death if

infected by COVID-19 (extraordinary); and (2) there exists an actual, non-speculative risk of exposure to COVID-19 at FCI Fort Dix (compelling).

> a.  Whether Johnson faces a uniquely high risk from COVID-19

In his motion, Johnson contends that he is at uniquely high risk of grave illness or death from COVID-19 because he is obese, needs chronic care and is African-American.  The court will also consider Johnson's request to the warden on June 28, 2020, which referenced "trouble with my breathing and a mild kidney infection."  (ECF No. 1286-2).  Johnson did not provide any further explanation about his medical conditions.  Johnson did not provide any medical records.

The court notes, briefly, that the conditions cited by Johnson may or may not pose a uniquely high risk of serious consequences from COVID-19.  The degree of obesity determines the severity of the risk.  A person with a Body Mass Index ("BMI") of 48 (i.e., morbidly obese), poses greater concern than a person with a BMI of 31 (i.e., slightly obese).  United States v. Grasha, No. 18-325, 2020 WL 5747829 at *4 (W.D. Pa. Sept. 24, 2020).   If Johnson's alleged need for "chronic care" rises to the level that he is unable to provide self-care in an institutional setting, *see* U.S.S.G. § 1B1.13, it could support compassionate release.  Johnson's race, standing alone, does not justify compassionate release.  In *United States v. Green*, No. CR 05-205, 2020 WL 3642860 (W.D. Pa. July 6, 2020), the court noted the following comment from the Centers for Disease Control ("CDC"):

> Current data suggests that African-Americans have been disproportionately affected by COVID-19 hospitalizations and deaths. It is unclear, however, whether race is an independent risk factor or whether the adverse outcomes are caused by other factors such as living conditions (such as population density), work conditions (including service in essential industries), lack of access to health care or the prevalence       of       other       underlying       medical       conditions. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html (last visited June 23, 2020).

Id. at *4.  Trouble breathing is a symptom of COVID-19 and may be a serious risk factor, depending upon the underlying condition.  https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Chronic kidney disease is also a risk factor.  Id.

Without more information from Johnson, the court is unable to evaluate his individualized risk factors.  Mere reference to broad, generalized conditions, such as obesity, "chronic care," "trouble breathing," or a "mild kidney infection" will not suffice.

The fact that Johnson tested positive for COVID-19 does not change the analysis.  Johnson's supplement does not contain any evidence that he experienced severe symptoms or was hospitalized.  Indeed, he cites a case involving an inmate with no serious current symptoms (ECF No. 1332).  In United States v. Mainor, No. CR 06-140-1, 2021 WL 183309, at *4 (E.D. Pa. Jan. 19, 2021), the court denied compassionate release and reasoned that the record did not establish that an inmate was particularly susceptible to a severe outcome from a second COVID-19 infection where he remained asymptomatic during his previous infection.  The court noted the consensus that the risk of reinfection does not warrant release.  Id. (citations omitted).  See United States v. Munford, No. CR 15-376-7, 2021 WL 111863, at *4 (E.D. Pa. Jan. 12, 2021) ("The risk of reinfection after a prior positive test for COVID-19 is a not basis for compassionate release").  Johnson, therefore, failed to meet his burden to produce evidence to establish that he faces a uniquely high risk of serious consequences from COVID-19.

   b.   Risk of exposure at FCI Fort Dix

The court takes judicial notice that there was an outbreak of COVID-19 at FCI Fort Dix, with a large number of inmates and staff testing positive for COVID-19. The Bureau of Prisons ("BOP") website reflected there were 586 inmates and 12 staff with active cases of COVID-19, https://www.bop.gov/coronavirus/index.jsp, visited January 4, 2021, which represents over 20%

of the prison population.  It is well-established that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting such as a prison.  The court concludes that although active cases among inmates are lower now (71, at most recent count) there is an actual, non-speculative risk that Johnson will be exposed to COVID-19 at FCI Fort Dix.

        c.   Conclusion about COVID-19

The court concludes that there is an actual risk that Johnson will again contract COVID-19 at FCI Fort Dix. Johnson, however, failed to show that his circumstances are *extraordinary*, i.e., that he has a serious medical condition that places him at "*uniquely* high risk" of grave illness if he contracts COVID-19.  Based upon the current record before the court, Johnson did not experience severe symptoms when he contracted COVID-19 the first time.  Because he did not satisfy both prongs of the test, Johnson has not shown that the conditions at FCI Fort Dix because of COVID-19 are an extraordinary and compelling reason for his compassionate release.[6] See United States v. Hodge, Crim. A. No. 99-06, 2020 WL 5880128, at *3 (D.V.I. Oct. 2, 2020) (holding that "the existence of COVID-19, and its presence in the facility where…[the defendant]

---

[6]    If the COVID-19 conditions at FCI Fort Dix constituted extraordinary and compelling reasons for Johnson's release, every prisoner at that facility would be *eligible* for compassionate release (with release ultimately subject to a court's discretion and analysis of the § 3553(a) factors with respect to that defendant). The Third Circuit Court of Appeals has recognized:

> [T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread. See generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_COVID19.jsp.

United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). Thus, as the court explained in Somerville, a defendant must show there is an actual risk he or she will contract COVID-19 while incarcerated and that he or she is particularly at-risk of suffering grave illness if he or she contracts COVID-19.

is incarcerated" is not an extraordinary or compelling reason justifying compassionate release);

United States v. Freed, No. 2:11-CR-00132-NR, 2020 WL 5604057, at *6 (W.D. Pa. Sept. 18,

2020) (denying the defendant's motion for compassionate release because, among other reasons,

the defendant's "arguments describe[d] only generalized risks that apply to every inmate at Fort

Dix and elsewhere"); United States v. Brinson, No. CR 15-87, 2020 WL 4736258, at *3 (W.D. Pa.

Aug. 14, 2020) (explaining that "'[t]he existence of the virus in a prison – even the level of

infection at Elkton – is not sufficient to establish extraordinary and compelling circumstances

without some proof that the defendant is at more severe risk for infection than his fellow inmates'")

(quoting United States v. Thornton, No. CR 2:18-167-1, 2020 WL 4368155, at *4 (W.D. Pa. July

29, 2020)).

### iv. Johnson' Family Circumstances

Johnson requests compassionate release because his son was recently incarcerated.

Johnson contends that he wants to spend more time with his son and that other family members

need his presence.

As discussed above, "extraordinary and compelling" reasons for compassionate release

were previously "defined by the commentary to policy statement U.S.S.G. § 1B1.13." Handerhan,

789 F. App'x at 925. The commentary to § 1B1.13 provides that the following two "family

circumstances" may constitute "extraordinary and compelling" circumstances warranting

compassionate release: (1) "The death or incapacitation of the caregiver of the defendant's minor

child or minor children[;]" and (2) "The incapacitation of the defendant's spouse or registered

partner when the defendant would be the only available caregiver for the spouse or registered

partner." U.S.S.G. § 1B1.13 cmt. n.1(C). While the policy statement set forth in § 1B1.13 is no

longer controlling, most courts find that it provides "helpful guidance" in determining whether the

family circumstances presented constitute "extraordinary and compelling" circumstances

warranting compassionate release. <u>United States v. Rodriguez</u>, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020); <u>United States v. Nassida</u>, No. CR 14-241, 2020 WL 4700845, at *1 (W.D. Pa. Aug. 13, 2020); <u>United States v. Doolittle</u>, No. CR 19-501 (SRC), 2020 WL 4188160, at *2 (D.N.J. July 21, 2020).

As discussed above, Johnson has the burden of proof by a preponderance of the evidence to show that his family circumstances warrant his compassionate release. Johnson did not meet his burden. Johnson did not point to the death or incapacitation of his spouse or the caregiver for his minor children and he did not show that he is the only person available to care for his family members. In sum, the court concludes that Johnson failed to meet his burden to show his family circumstances are extraordinary and compelling reasons for his compassionate release.

### v.  Johnson' Rehabilitation while Incarcerated

Johnson points to his rehabilitation while incarcerated as further evidence of the extraordinary and compelling circumstances presented in this case. While incarcerated, Johnson obtained his "GED" and completed numerous educational and vocational courses. (ECF No. 1286-5, 1286-6). Johnson' efforts to rehabilitate himself while incarcerated are commendable, but do not satisfy his burden to show his entitlement to compassionate release. The court will consider his rehabilitative efforts as part of its assessment of the § 3553(a) factors.

### IV.    Section 3553(a) factors

The compassionate release statute states that a court may reduce the term of imprisonment "after" it considers the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable. 18 U.S.C. § 3582(c)(1)(A). Although the court already concluded that Johnson failed to show extraordinary or compelling reasons and need not address the other steps of the inquiry, the court will address the § 3553 factors as an alternative analysis. In doing so, the court will

consider Johnson's continuing post-sentence rehabilitation.  *See* <u>United States v. Tidwell</u>, No. CR 94-353, 2020 WL 4504448, at *7 (E.D. Pa. Aug. 5, 2020) (court's review of the § 3553(a) factors must consider the "most up-to-date picture" of the defendant's "history and characteristics," including evidence of rehabilitation).

The court weighed the § 3553(a) factors on July 31, 2013, when imposing the original sentence.  The court noted that Johnson engaged in a serious offense by buying and selling large quantities of cocaine.  The court recognized that Johnson had a difficult childhood because his mother was addicted to drugs.  The court granted a significant downward variance (60 months below the low end of the advisory guideline range) to reflect this difficult childhood.  The court also ordered that 15 months of Johnson's prison term run concurrent with an undischarged state sentence. The court considered Johnson's own addiction, his extensive criminal history and his classification as a career offender.  The court concluded that a term of imprisonment of 300 months was sufficient, but no greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes by Johnson.

The government emphasizes that Johnson poses a danger to the community if released. The "danger to the community" policy consideration in U.S.S.G. § 1B1.13 is somewhat similar to the § 3553(a)(2)(C) sentencing factor that a sentence "protect the public from further crimes of the defendant."   The government argues that despite his rehabilitative efforts, Johnson remains a danger to the community based on his lifelong involvement in crime and his entrenched crack and cocaine distribution activities (ECF No. 1310 at 19).  The government points out that being on supervision did not prevent Johnson from committing the instant offense.

Upon reexamining the § 3553(a) factors, the court adheres to its original determination. Johnson already received the benefit of a significant downward variance from the advisory

guideline range.  A further reduction of his sentence would not be consistent with the statutory sentencing purposes.


**V.     Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Johnson did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his premature release from imprisonment. His motion for compassionate release (ECF No. 1286) will, therefore, be denied without prejudice. An appropriate order will be entered.


Dated: February 5, 2021                 BY THE COURT:

                                        /s/ Joy Flowers Conti
                                        Joy Flowers Conti
                                        Senior United States District Judge